IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MICHAEL DWAINE ROTZINGER<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY<br>    Defendant. | No. 4:13-CV-04007-JEH |

**Order and Opinion**

Now before the Court are cross motions for summary judgment after the Commissioner denied Mr. Rotzinger's claims for disability insurance benefits and supplemental security income. For the reasons stated herein, the Court AFFIRMS the Administrative Law Judge's (ALJ) decision denying Mr. Rotzinger's claims for benefits.

**I**

On September 21, 2009, Rotzinger filed a claim for disability insurance benefits and on October 14, 2010, he filed a claim for supplemental security income. (SS Transcript p. 184). In his applications, Rotzinger alleged disability beginning on August 17, 2008.[1] Id. The claim was denied initially on January 12, 2010. (SS Transcript p. 125). The claim was denied upon reconsideration on April 14, 2010. (SS Transcript p. 126). On July 1, 2010, Rotzinger filed a timely request for hearing concerning his applications for disability insurance benefits and for supplemental security income. (SS Transcript p. 140). A hearing was held before the Honorable Robert C. Asbille on May 17, 2011, at which time Rotzinger was represented by an

---

[1] Rotzinger amended his onset date to August 28, 2008, the date of his cancer diagnosis.

1

attorney. (SS Transcript pp. 86-124). Following the hearing, Rotzinger's claims were denied. (SS Transcript pp. 12-26). Rotzinger's request for review by the Appeals Council was denied on December 3, 2012, making the ALJ's decision the final decision of the Commissioner. (SS Transcript pp. 1-6). Rotzinger filed the instant civil action, *pro se*, seeking review of the ALJ's decision on February 4, 2013.

## II

At the time he applied for benefits, Rotzinger was 58 a year old single man living in Chicago, Illinois who had previously worked as a financial accountant for approximately 36 years. (SS Transcript p. 184). On his Form SSA-3368, he provided that the illnesses, injuries, or conditions that limited his ability to work included prostate cancer, diabetes, a heart attack, and hypertension, and those things limited his ability to work because he could not walk for long distances, could not control his feelings of fatigue or weakness when his blood sugar was too low, could not keep his balance, was constantly aching and uncomfortable, and he would black out. (SS Transcript p. 191). At the hearing before the ALJ, Rotzinger testified that at the time of the hearing he was too weak to be in the office for a long period of time. (SS Transcript p. 93). He also testified that he did a little bit of housework and laundry, went food shopping, watched a little television, fell asleep usually twice a day, read books, and tried to take a walk every day. (SS Transcript pp. 97-99).

In determining whether Rotzinger was disabled as that term is defined in the Social Security Act, the ALJ considered Rotzinger's alleged disability due to prostate cancer, diabetes, heart attack, high blood pressure, urinary problems, slight retinopathy, left foot neuropathy, joint weakness, and depression. The ALJ specifically referenced Rotzinger's own testimony, his Veteran's Affairs medical records, a post-hearing consultative psychiatric evaluation, the medical expert's testimony, State Agency physicians' opinions, and the Vocational Expert's testimony in reaching his decision that Rotzinger was not under a disability from August 17, 2008 through the date of the decision on September 23, 2011.

## III

Rotzinger argues that he does not just have one specific item debilitating to him, and that it can be a combination of things which are disabling. In support of that position, he says that his health has not bettered and has steadily become worse since the ALJ denied his claims.

Pursuant to 42 USC § 405(g), the Commissioner's findings must be sustained by the Court if they are supported by "substantial evidence." 42 USC 405(g). The entire administrative record must be reviewed for substantial evidence which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v Astrue*, 478 F3d 836, 841 (7th Cir 2007), quoting *Richardson v Perales*, 402 US 389, 401 (1971). The Court may not substitute its judgment for that of the ALJ. *Schmidt v Apfel*, 201 F3d 970, 972 (7th Cir 2000).

## IV

It was Rotzinger's own testimony at his hearing that alone serves as substantial evidence to support the ALJ's determination that Rotzinger was not disabled from August 17, 2008 to the date of his decision on September 21, 2009. He testified that he could do a little bit of housework, go shopping for food, take walks, and do a little bit of laundry. (SS Transcript pp. 97-99). He also testified that he read books and understood them. (SS Transcript pp. 99-100). When asked whether he could do accounting work, Rotzinger answered that he could do so because most of it is mental. (SS Transcript p. 99). The following colloquy also took place:

> Q: So let me ask you this. If somebody gave you a job in an accounting spiel that doesn't have to be the most complicated job there is, just some job working in, as accountant. Do you think you could do that now eight hours a day, 40 hours a week?
>
> A: Well with 30 years of experience, yes, I probably could but if it were something that was doing risk analysis or something it would probably bother me.
>
> Q: No, I'm just asking about your basic accounting work.

A: Yeah, just fundamental accounting I could handle.

(SS Transcript p. 100). When asked whether he felt his depression medication was helping, Rotzinger answered that it helped a little bit and that he was sometimes curious as to why he was taking it. (SS Transcript p. 108). When asked about his prognosis as of May 17, 2011, Rotzinger said:

> A: That now they, they said they – that I'm a miracle child, that I've actually overcome things that they never expected. I overcame the fact that I, my renal failure they never thought I would get off dialysis when I first started it, that I'd be on it the rest of my life.
>
> Q: Okay.
>
> A: And then my kidneys kicked back in.

(SS Transcript pp. 108-09). He also testified that he could "probably try [a more simple type of accounting position] and probably be able to work under certain circumstances. (SS Transcript p. 111). While Rotzinger did testify to lack of stamina and concentration at times, he repeatedly testified as set forth above that he could do work as an accountant.

Though Rotzinger's own testimony at his hearing is the requisite substantial evidence to support the ALJ's decision, this Court also finds that the ALJ's residual functional capacity finding is supported by substantial evidence where it was, in part, based upon that testimony. The ALJ found that Rotzinger met steps 1 and 2 of the five-step sequential evaluation process. See 20 CFR § 404.1520(b) and § 416.920(b) (work that is substantial gainful activity will preclude a finding of disability); and 20 CFR § 404.1520(c) and §416.920(c) (an absence of severe impairment will preclude a finding of disability). Namely, the ALJ found that Rotzinger had not engaged in substantial gainful activity since August 17, 2008 and that he had the following severe impairments: history of prostate cancer, diabetes,

and hypertension. (SS Transcript p. 14). In reaching those findings, the ALJ relied upon Rotzinger's testimony, VA records, and a consultative psychiatric evaluation.

At step 3 of the sequential evaluation process, the ALJ found that Rotzinger had:

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he [was] unable to lift/carry/push/pull more than 5 pounds frequently and 10 pounds occasionally; unable to stand and/or walk more than 2 hours total in an 8-hour workday; able to sit for at least 6 hours in an 8-hour workday, unable to climb ladders, ropes or scaffolds, but otherwise able to occasionally perform other posturals; unable to work around unprotected heights or dangerous moving machinery. He [was] able to perform detailed and complex tasks in jobs requiring no more than occasional contact with the general public and no good social judgment.

(SS Transcript p.p. 18-19). In making that finding, the ALJ once again relied upon Rotzinger's VA records and his testimony, and the impartial medical expert's, Dr. Julian J. Freeman's, opinion. In fact, the ALJ stated in his Decision that he "deemed the medical expert reliable and adopt[ed] his testimony." (SS Transcript p. 18). Particularly, Rotzinger's testimony was heard by Dr. Freeman before he rendered his opinion at the hearing. 20 CFR § 404.1520(f).

Dr. Freeman, in conformity with the medical records, placed Rotzinger at a sedentary level of function, and noted that there was no medical evidence of a mental disorder so as to impose restrictions on his mental functioning. (SS Transcript pp. 113, 114). Instead, Dr. Freeman testified that Rotzinger's memory appeared to be intact in terms of numerical reasoning ability and ability to recall facts and events. (SS Transcript pp. 114-15). Significantly, Dr. Freeman testified to the restrictions he would place on Rotzinger's ability to stand, walk, and carry by factoring in Rotzinger's degree of non-control of his diabetes, hypertension, and mild renal insufficiency.

Dr. Freeman went so far as to disagree with Rotzinger's own testimony that he could stand and walk six out of eight hours a day in light of Rotzinger's A1Cs in the 9 to 10 range. Dr. Freeman testified that there was a lack of current medical data in Rotzinger's records as to the presence of neuropathy, among other things, to make an accurate assessment at the time of the hearing.[2] Notably, in the additional medical records provided to the ALJ after the hearing, Rotzinger's A1C levels went as low as 7.3 in May 2011 and his creatinine levels were lower than the level identified by Dr. Freeman at the hearing. (SS Transcript p. 1313) (creatinine at 1.19); (SS Transcript p. 1315) (A1C at 7.3).

The ALJ clearly accounted for the severe impairments of prostate cancer, diabetes, hypertension, and renal insufficiency that Rotzinger identifies in his Motion for Summary Judgment, albeit at the level of severity Dr. Freeman testified to as supported by the then-current medical records, when the ALJ made his RFC finding. As the Commissioner correctly argues, the instance in the medical record where it states that Rotzinger's diabetes was complicated due to neuropathy, etc., does not compel this Court to find that the ALJ's decision was not supported by substantial evidence. (SS Transcript p. 1313).

In the end, this Court will not engage in its own weighing of the evidence where the ALJ made his determination by giving "great weight" to the opinion of the medical expert who had, among other things, the opportunity to review Rotzinger's medical file and listen to the testimony at the hearing before he gave his own testimony. See *Pugh v Bowen*, 870 F2d 1271, 1274 (7th Cir 1989) (stating that the court may not reweigh the evidence or substitute its own judgment for that of the ALJ).

---

[2] Similarly, Dr. Freeman testified that there was a lack of medical data regarding any mental illness. As the Commissioner argues in its Motion for Summary Affirmance, Rotzinger does not argue in his Motion for Summary Judgment that the ALJ erred in evaluating his mental abilities. Thus, the Court will not analyze an argument that was not made by Rotzinger.

Accordingly, the Vocational Expert Margaret Ford's conclusions that the physical and mental demands of Rotzinger's past relevant work as an accountant were not inconsistent with his RFC and that Rotzinger would be able to apply the principles of accounting to analyze the information and prepare reports if he was able to do complex and detailed tasks have ample support within the record that was before the ALJ. (SS Transcript p. 120).

Ultimately, the ALJ built a logical bridge from the evidence of record to his conclusion that Rotzinger was able to perform his past relevant work as an accountant given his residual functional capacity to perform sedentary work. *Murphy v Colvin*, 2014 WL 3586260, \*2 (7th Cir), quoting *Schmidt v Barnhart*, 395 F3d 737, 744 (7th Cir 2005) (explaining that the ALJ must "build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence). In other words, this Court can "trace the path" of the ALJ's reasoning where he clearly explained that he adopted the medical expert's testimony, which in turn clearly provided the reasons for why Rotzinger's residual functional capacity was defined as it was. See *Diaz v Chater*, 55 F3d 300, 307 (7th Cir 1995) (stating that an ALJ must articulate at a minimum level his analysis of the evidence to allow the appellate court to trace the path of the ALJ's reasoning). Moreover, it was Rotzinger's own testimony, acknowledged by Dr. Freeman at the hearing, which indicated that Dr. Freeman's assessment of his residual functional capacity was in accord with his documented impairments.

In his Motion for Summary Judgment, Rotzinger details his current physical health and explains how "fine lettering and reports are *now* very difficult" for him to read. ([Doc. 12 at p. 2](Doc. 12 at p. 2)). What his *current* A1Cs, *current* extent of neuropathy, and *current* kidney function are is not relevant to the inquiry at this time which is whether the evidence that was before the ALJ, as a whole, supports the ALJ's decision that Rotzinger was not disabled within the meaning of the Social Security Act from August 17, 2008 to September 23, 2011. Implicit in the standard of review

this Court must apply to the ALJ's decision is that this Court must look to the record as a whole as it existed at the time the ALJ made his decision. See *Elder v Astrue*, 529 F3d 408, 413 (7th Cir 2008), quoting *Schmidt v Astrue*, 496 F3d 833, 842 (7th Cir 2007) (explaining that if substantial evidence supports the ALJ's decision, it shall be affirmed).

V

Though Rotzinger does not make any arguments as to the Appeals Council's denial of his request for review, there is no such argument to be made in this case. 20 CFR § 404.970(b) provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

The additional medical records submitted to the Appeals Council are dated May 13, 2011 through March 5, 2012. Those additional records include fluctuating A1Cs (just like the medical records that were before the ALJ showed) and creatinine levels close to and even below the level identified by Dr. Freeman at the hearing. Thus, none of the additional medical records meet the criteria for "new and material" evidence. See *Barnhart*, 395 F3d at 742, citing *Johnson v Apfel*, 191 F3d 770, 776 (7th Cir 1999) (defining "new" evidence as that not in existence or available to the claimant at the time of the administrative proceeding, and defining new evidence as "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered). The evidence is certainly "new" to the extent it was not in existence or available to Rotzinger at the time of the administrative proceeding. It cannot, however, be considered "material"

8

because there is not a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered, given that the records are similar to those that were before the ALJ in that they do not demonstrate severe neuropathy.

## VI

Finally, whether Rotzinger would today be entitled to disability insurance benefits and supplemental security income based upon a new application due to the worsening of his condition as alleged in his Motion for Summary Judgment is not a question currently before this Court.

For the reasons set forth herein, Rotzinger's Motion for Summary Judgment ([Doc. 12](#)) is DENIED and the Commissioner's Motion for Summary Affirmance ([Doc. 16](#)) is GRANTED. This matter is now terminated.

Entered on August 5, 2014

s/Jonathan E. Hawley<br>
U.S. MAGISTRATE JUDGE